## ATCHISON vs. STEAM BOAT "DR. FRANKLIN."

1. In an action for an injury to a boat, by collision, the measure of damages is the amount paid for raising and repairing the boat, with interest thereon, to the rendition of the verdict.

2. In general, when a witness has been examined in chief, cross examined, re-examined by the party calling him, and finally dismissed, it lies very much in the sound discretion of the court trying the case, whether such witness can again be recalled. The circumstances peculiar to each case, must, to some extent, control this discretion.

3. If the object in recalling a witness be to re-affirm his former statement *only*, it is unnecessary, and tends to endless repetition.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

A collision alleged to be occasioned by the negligence of the officers and crew of the appellees, whereby the steamboat Amaranth, belonging to plaintiff, was sunk in the Mississippi river near Clarksville, in the month of March, 1849. The above action was brought under our statute concerning boats and vessels, and the damages were laid at $30,000. The captain of the Dr. Franklin appeared and pleaded the statutory general issue.

At the trial which took place in May, 1850, evidence was offered and given by the plaintiffs tending to show that the boats were some three or four miles below Clarksville in the Mississippi river, and west of the main channel thereof, when the collision occurred on the night of 22d March, 1849; that the bow of the Dr. Franklin made a break into the side of the Amaranth, belonging to plaintiff, and sunk her. That the Amaranth was much the larger vessel of the two. That the A. was ascending and the Dr. F. descending the river at the time. That the collision was occasioned by the negligence, recklessness, unskillfulness and neglect of signals of the officers and crew of the Dr. F. That the officers and crew of the Amaranth conducted themselves with skill and care, and that the officers and crew of the Dr. F. conducted themselves recklessly and unskillfully, and that by reason of the sinking of the Amaranth, the plaintiffs were deprived of the use of her for one month, and were forced to expend in raising her the sum of $5835 63, besides the services of her own crew. Plaintiffs then offered to show that the boat would have been worth to plaintiffs for the thirty days following the 22d March, 1849, had she continued afloat uninjured; but the court refused to allow such evidences to be given. Plaintiffs then offered to show that the trips for which the A. was engaged for the 20 days following March 22d, 1849, would have yielded to the plaintiffs profits to a large amount; but the court refused to permit such evidence to be given, and the plaintiffs excepted to the ruling of the court on the aforesaid points. The court directed the jury that they could only allow to the plaintiffs for the loss of the time during which the boat was rendered unserviceable by the collision, interest at six per cent. per annum upon her value which was shown to be $————.

The defendants offered evidence tending to show that the collision was occasioned by the fault of the officers and crew of the Amaranth, and that the officers and crew of the Dr. F. were free from blame. One of their witnesses, David Berry, after giving evidence of the tenor above indicated, was asked on cross examination, if he had not stated that the collision

Atchison vs. Steamboat Dr. Franklin.

was owing to the mistake of the pilot of the Dr. F., in conversation with Samuel Atchison on coming to St. Louis, 'he day after the collision. He replied that he had no such conversation with Samuel Atchison. He was then asked if he did not tell A. that in the confusion, on the meeting of the boats, the wrong bell was wrung on board the Dr. F. He replied that he did not. He was cautioned, and particularly requested to remember and say if such a conversation had not happened ; and he emphatically replied that he never did hold such a conversation with him or with any one else. On re-examination by the defendant, he re-affirmed the same statement, admitting that he, met Atchison, but denied having had any such talk with him or any other person.

Samuel Atchison was then called by the plaintiffs, and being sworn, stated that Berry had held with him on the morning of the 23d March, 1849, at St. Louis, the conversation which the said Berry had denied in his evidence.

The defendants then offered to re-produce Berry, and in answer to a question by the court, declared their object to be to make him re-affirm what he had already stated on his first examination ; whereupon the court refused to permit his re-production for such purpose, and the defendants excepted to said refusal. This was all the evidence. The defendants then asked of the court the following instructions, which were given, the plaintiffs excepting.

1. If the jury find from the evidence that the steamboat Amaranth was in fault in producing the collision, and that the unskillfulness or carelessness of those who navigated her caused the collision, they will find for the defendant.

2. If the jury find from the evidence that the unskillfulness or mismanagement of those who navigated the Amaranth, contributed to the collision substantially, they will find for the defendants.

3. If the jury find from the evidence, that the collision of the two boats happened in consequence of the negligence, unskilfulness, or inattention of signals, or improperly giving them on behalf of those managing and navigating both boats, they will find for the defendant.

5. That if the collision of said two boats was the result of accident, to which no mismanagement nor neglect, nor unskillfulness on the part of those then navigating and controlling the Dr. F. in any wise contributed, then there can be no recovery against the defendants. To the giving of which the plaintiffs excepted.

The defendant also asked the following instruction, which the court refused, and to which the defendant excepted.

4. That if those who navigated and controlled the Dr. F. were guilty of no evil motive, and controlled said boat and navigated her after she came in sight of the Amaranth, with reasonable skill, care and attention, then the defendant is not liable for the damages of the collision, even although those who navigated the A. were not in fault.

The plaintiffs then asked the following instruction : "If the jury find for the plaintiffs, they will assess the damages at such sum as the plaintiffs have paid for raising and repairing their boat, and interest thereon to the time of rendering their verdict."

To the giving of which the defendant excepted. There was a verdict for the plaintiffs for the $6344 77. Defendant moved to set aside for the following alledged reasons :

1. Verdict was against law and evidence.

2. The court excluded competent testimony offered by defendant.

3. The court refused to permit D. Berry to be recalled to repeat his former statement, after being contradicted by Samuel Atchison.

4. The court admitted improper and illegal testimony on the part of the plaintiffs.

5. The damages are excessive.

6. The court refused proper instructions, and

7. The court gave improper instructions to the jury.

8. The jury misbehaved, as follows, viz: One of them fell asleep, and so continued during a good part of the argument of defendant's counsel, and again fell asleep during the concluding argument of plaintiffs counsel.

9. Because one of the plaintiffs spoke to one of the jurors during the progress of the cause without the permission of the court.

10. The defendant was surprised by the testimony of Samuel A., and by the refusal of the court to permit the recall of Berry. In support of which reason, the affidavits of Berry and Lodwick are cited.

11. Because defendant has learned for the first time since the trial of the cause, that he can, if permitted, discredit Samuel A., and impeach his credibility as a witness.

The affidavits of Capt. Lodwick, (who was owner as well as master of the Dr. F.) set out that he was surprised by the production of Samuel A. by the plaintiffs. That the plaintiffs announced that they had closed their case, and yet after the defendant had given evidence, the plaintiffs introduced Sam'l A., who testified in a manner which surprised the said Lodwick exceedingly; and that said Lodwick is positive that A. was mistaken, and that Berry never did state what A. said he did.

The affidavit of Berry merely reiterates what he said as witness, and states that he would have repeated his statement, if allowed to testify after A., and would have contradicted A. He states nothing in his affidavit that he did not state before as witness.

The court overruled the motion for a new trial. The defendant filed his bill of exceptions and appealed to this court.

SPALDING & SHEPLEY, for appellants.

I. The court erred in excluding the testimony of Berry, who had been examined for the defendant, and in such examination stated that he "never had said to A.'s nephew that he had rung the wrong bell or given the wrong signal." The nephew was then called and stated that Berry had told him that the young man on board the Dr. F. had rung the wrong bell, and it threw them on the wrong side of the crossing; that the young man tapped the big bell only once when he wanted him to tap twice, so as to run to the left. The defendant then recalled Berry, and offered to examine him as to that conversation, and the court excluded him. 4 Cow. Rep. 557, Iredson vs Blanchard ; at page 565 is a decision, that when witness is introduced to impugn the testimony of another by testifying to a conversation between them, the witness whose testimony is thus impugned may be recalled to contradict and explain.

1. It is necessary for the purposes of justice that the whole matter may come out, and the jury be enabled to form an opinion, that the witness in such cases should be recalled.

2. This first examination in regard to the supposed conversation, is not evidence in the case. It is merely preliminary in order to lay a foundation for the introduction or testimony impeaching his credibility. When the conversation has been detailed in all its circumstances, and his mind refreshed, it is fair to give him the opportunity of explaining or denying; and it would be very satisfactory to a jury.

3. This rule of examination of a witness is based on two reasons; one is regard to the feelings and character of the witness; and the other is that the jury is thus more likely to be instructed as to the real state of the facts. Now both of these reasons required the witness to be recalled. When first asked if he ever said so and so, perhaps the conversation is out of his mind; but when he has heard another testify to it in its particulars, he is in a condition to state what did take place.

5. In the present case the preliminary examination of Berry was not, when compared with the testimony of Atchison, the impugning witness, sufficiently specific and pointed to refresh his mind, and bring up before his memory the very matters which were to be proved against him as his declarations. The variance is striking, and no doubt the jury and all who heard the trial were desirous of knowing what Berry would have said after hearing A. detail the alleged conversation, with circumstances of time and place, and wherein the supposed mistake in signals consisted, and who made the mistake. 1 Mood & Walk. 473 (22 Eng. Com. L. R. 360) Ch, Ins. Tindall says, "I understand the rule to be that before you can contradict a witness

5

by showing he has at some other time said something inconsistent with his present evidence you must ask him as to the time, place and person involved in the supposed contradict on. It is not enough to ask him the general question whether he has ever said so and so ; because it may frequently happen that upon the general question he may not remember having so said : whereas, when, his attention is challenged to particular persons and allusions, he may recollect and explain what he has formerly said." Roscoe on Ev. 96; 1 Greenl f Ev. 514 ; Cow. & Hill's notes, part 1, p. 774-5, where it appears to have been the practice in N. York to have both the impeaching and impeached witnesses on the stand at the same time, and the contradictions between them fully examined and explained. In Massachusetts the preliminary examination has never been in use. The practice there has been to permit the contradictory witness to testify, and to call on the impeached witness to hear him, and then to make his own explanations. 17 Mass. R. 160.

The English practice has, however, been introduced and followed in this country. 3 Stark. Ev. 1753-4 ; Ros. Ev. 96 ; 1 Greenl. Ev. 514 ; 6 Miss. 1 ; 7 Miss. 120.

In Greenl. Ev. 514, sec. 462, the author lays it down as necessary that the witness should have an opportunity "by re-examination, to explain the nature, circumstances, meaning and design of what he is elsewhere proved to have said." 7 Car. & Payne 789 (32 E. C. L. 738.) In this case, as witness testified on cross examination, a paper was shown to him which he admitted was signed by him. This paper contradicted his evidence. The court said that the witness might be called back to explain it.

As to general doctrine, in addition to the above. See the following : 19 Vt. Rep. 338 ; 2 Gilman 34 ; 7 Blackf. 186; 1 McLean 540; 17 Wend. 419; 11 Gill & John ; 2 Ala. 43.

II. The court erred in refusing defendant's fourth instruction, calling on the court to say that if the collision was a casualty, (the defendant not being blameworthy) there could be no recovery, even if A. was not blameworthy. Gilpin 579, where two vessels run afoul of each other, without blame on the part of either, the loss must be borne by that on which it fals.

11 Mo. R. 30—there must be negligence on part of officers of a steamboat to render her liable.

7 Mon. 37—If collision be accidental or unavoidable, there [can be no recovery; nor can there be if both are in fault. Abbot on shipping ; Sty. on blmts. sec. 611, 610.

III. Court erred in giving plaintiffs 1st instruction, directing the jury if they found for the plaintiff to give amount plaintiffs paid for raising and repairing the boat, and interest thereon.

1. This is wrong, in taking from the jury the right of judging whether those expenses were recoverable or not. If they paid twice as much as the services were worth, the defendants ought not to refund this.

2. It was a quantum meruit. It is not matter of law that the plaintiffs paid only what their work and services were worth.

IV. Court ought to have granted a new trial for the reasons assigned, and especially for the surprise of defendant, by the testimony of Sam'l Atchison.

Acts of 1848-9, page 87, section 3—specifying certain cases in which new trial shall be granted.

5 Cow. 106—A new trial was granted as a witness swore to what party would not have expected, and been prepared to meet. Graham on new trial, 188-9, &c.

V. The court erred in excluding a portion of the deposition of Jacob Bowman, relative to what George Hight, pilot of the Amaranth, had said on the day of the collision.

The doctrine of laying the foundation by a previous examination of the impeached witness does not apply to depositions. 19 Vt. 338. Height was in California, and left for that country immediately after his deposition was taken. His deposition was taken soon after the collision, when the defendants could not know or have reason to think that he had said anything which would contradict what he stated in his deposition ; and of course they could not ask him those preliminary questions at time of the trial and before it. Ever since the collision California has been in such an anomalous state that depositions could not be taken there.

Atchison vs Steamboat Dr. Franklin.

CROCKETT & KASSON, for appellants.

The defendant had the right to examine the witness, David Berry, whose testimony was of the first importance, and whose testimony the plaintiffs sought to impeach by proving contradictory declarations, prior to the suit. He was entitled to an opportunity to explain, and correct the impeaching witness, as well as sustain his own veracity. See especially the clear statement of the rule as laid down in 1 Greenl. Ev. § 462.

Here the witness was not asked in the first instance by the plaintiffs respecting a conversation in the place, of which proof was given. It was not enough to mention a city of several miles in extent and 80,000 inhabitants, in a matter designed to impeach the veracity of a witness.

Besides, the witness said it was on Main street he had a conversation with the witness, while the witness, Atchison, fixed the place of conversation in front of McAllister's store, on the Levee. Atchison also went into details calculated to refresh a witness's recollection of the conversation ; and of which the witness Berry had not been enquired. The change of a single word, or an explanation of the application of the language used by Berry to the other party, instead of the defendant, would have changed the whole effect of the testimony.

This opportunity of the witness Berry to confront the impeaching witness, to show him incorrect, and to explain the errors, and reconcile his statements with veracity, is not only requisite to protect the witness's, but also to render more certain the attainment of a just verdict.

The reasons for this practice will be found in 1 Stark. Ev. 484 (and n. g.) ; pt. I. Cow & Hill's notes, Phil. Ev. note 533, pp. 774-5. and the instance of mistake cited by judge Cowen.

It will appear by examination of the questions put to Berry, and his answers, and comparing them with Atchison's testimony, that they by no means accurately correspond in terms and meaning.

The place mentioned by A. is not the same named by Berry. His declarations are given in a different form by A., from those implied in the questions to Berry ; and the correction of a very slight verbal mistake of A.'s, would have changed the whole significance of the testimony.

The evidence related to the central point of the case, and the refusal of the court to permit the re-examination of the witness, Berry, was calculated to give additional weight to the impeachment of his testimony offered by the plaintiff. Berry was present in court during A.'s examination, for the very purpose of being able, on re-examination to correct his errors of recollection, and reconciling his veracity with the proof. And the court ought to have (upon all considerations) permitted it, both with respect to the character of the witness, and the right determination of the case.

The instruction No. 4 asked by defendant, and refused, was good law, and ought to have been given.

If neither vessel was in fault, the damage lies where it falls, as if it accrued from any inevitable peril, "from the act of God" or the "King's enemies."

The rules of admissibility have not all been applied and adopted (as laid down by Lord Stowell in the case of the "Woodrop Sins," 2 Dods. Ad. R. 83.) in the com. law courts. But these hold that no action lies except for the certain fault of the defendant, and Chan. Kent corrects his text accordingly. (3 Kent. Com. 5 Ed. (1844, p. 231.) And not then, if plaintiffs fault materially contributed to the injury.

The same rule applies to cases of collision between steamboats on the western rivers.

Neither party can sue the other, unless the plaintiff is without material fault, and also the defendant's material fault caused the damage. If neither boat is in fault, in courts of common law it is the "act of God," for which the suffering party cannot have his action, either for the damage or for contribution. Broadwell vs. Swigert, 7 B. Monroe, (Ky.) 39; Abbot on Shipping, (Ed. 1850) p. 303, (n. 1) p. 230.

Atchison vs. Steamboat Dr. Franklin.

GAMBLE & GANTT, for appellees.

The appellees, in reply to the reasons urged in the circuit court for a new trial, submit the following propositions:

1. The evidence offered to the jury, although greatly preponderating in favor of appellees, was conflicting. The supreme court will not disturb such a verdict as being against evidence.

2. The instructions given by the court were all, (except one, to be presently noticed) asked for by the defendant, and contain an exposition of the law erroneous in this, merely, viz: that it is far too favorable for the defendant. But the supreme court will not set aside the verdict on this ground at the instance of defendant.

These two points have been so repeatedly ruled by the court, that appellees will not cite authorities in their support.

3. The circuit court correctly refused to permit the recall of Berry. He had once been fully examined, cross examined, and re-examined. The object in recalling him was stated to be merely that he might reiterate what he had already said. There would be no end to trials, if such idle conduct were permitted. The witness had already been re-examined, and this was all which he could require. There is no pretence that there could have been any explanation by Berry of his testimony, and his affidavit shows that no qualification of what he said was intended. 3 Ch. Gen. Prac. 901, and cases there cited; 1 Stark. Ev. 179 '80; 1 Greenl. Ev. § 467, 468; 1 Phil. Ev. 304.

4. No testimony offered or given by plaintiff below, (appellees here) was objected to by appellant, and appellees cannot conjecture to what point of the record that reason was directed.

5. For answer to the 5th reason, they submit that the damages are not excessive, and refer to the record for proof.

6. The only instruction refused by the court, of which appellant is in a position to complain, was properly refused. It attempts to make the liability of the defendant depend upon the motives of her officers and crew, which, in this form of action, were entirely immaterial. All that was law on the subject of this instruction, had already been given.

7. The only instruction asked for by plaintiff below was, that the jury, if they found for the plaintiff, should allow them interest on the sum paid, for repairing the damages inflicted by the defendant, and in this there is no error.

As no evidence was offered in support of the eighth reason, it must be presumed that the court below saw nothing to blame in the conduct of the juror indicated.

9. The same presumption affords an answer to the ninth reason.

10. The affidavits of Lodwick and Berry show no purpose which can be a foundation of a motion for a new trial. Cooke vs. Berry, 1 Wils. 98; 12 Mo. R. 380; Robbins vs. Alton, Marine and Fire Ins. Co., 8 Mo. Rep. 274, Shepherd vs. Citizens Ins. Co.

11. A new trial is never granted to give an opportunity to impeach the credit of witnesses. Burns vs. Hart, 3 John, 255; Dickinson vs. Blake, 7 Brown's Par. Cas. 147; 5 John. R. 248; 4 John. 425.

12. Besides which, the charge made against the witness, (i. e. of non credibility) is not even supported by affidavit, nor does the defendant offer any thing in support of this reason.

13. The defendant Lodwick does not in his affidavit deny the truth of what Atchison stated in evidence, nor disclose any means whereby at another trial he might expect to invalidate it or contradict it.

14. Berry in his affidavit merely reaffirms what he had stated in evidence. He and Samuel Atchison contradicted each other directly. One or the other was wrong. The proper tribunal—the jury—has decided that Berry was in the wrong, (if they decided the case on this point at all.) The supreme court will not disturb such a verdict. Tiffin vs. Torrester,

8 Mo. R. 642; Lackey vs. Lane & McCabe, 7 Mo. Rep. 220, and the whole current of decisions of this court.

15. The manner in which the examination of witnesses shall be conducted, is necessarily committed in a great degree to the discretion of the court. If all the facts which a witness can prove are before the jury by means of his evidence, it is immaterial in what order he was examined. Brown vs. Burns, 8 Mo. Rep. 26; Blair vs. Perpetual Ins. Co., 10 Mo. Rep. 559.

16. Berry's affidavit does not contradict Atchison's testimony one whit more directly than his testimony had already done. He does not negative the place of the conversation, nor does he show that his memory was in any wise refreshed by hearing A. depose. All, that by any process could have been elicited from Berry, was already in evidence. It is submitted that there is no error in not permitting the indefinite repetition of the same evidence by the same witness.

NAPTON, J., delivered the opinion of the court.

The first error assigned in this case, is the refusal of instruction No. 4, and giving the instruction asked by the plaintiffs.

We have not been able to perceive that instruction No. 4 affects any legal principle important to the defendant's rights, different from or additional to what had already been given in previous instructions. The jury were told that if the Amaranth was in fault, wholly or partially, or if both boats were in fault, or if neither were, and the collision was the result of mere accident, the plaintiffs could not recover. Instruction No. 4 applies to an accidental collision, and this had already been mentioned in previous instructions, though not in precisely the same form of expression. Indeed that part of instruction No. 4, which speaks of the motives of those who controlled the Franklin, is positively objectionable and calculated to mislead.

The instruction which the court gave in relation to damages was correct. It is fairly to be implied from its language, that the price paid for repairing the injury done to the Amaranth was a reasonable one, and in the absence of all proof on that subject, the jury was authorized so to consider it. Had the point been really a controverted one, and the defendant desired more specific instructions, the court would no doubt have given them.

The principle point relied on in this case, is the refusal of the court to permit Berry to be recalled, after he had been dismissed from the witness stand. In general, when a witness has been examined in chief, cross examined, re-examined by the party calling him, and finally dismissed, it lies very much in the sound discretion of the court trying the case, whether such witness can again be recalled. It is quite obvious, upon reason and authority, that the circumstances peculiar to each case,

must to some extent control this discretion. Here the witness Berry had been examined in relation to the causes of the collision between the Amaranth and the Franklin, and he had given his own version of the occurrence, when the plaintiffs directed his attention to a supposed conversation between him and one Atchison, in which his statements were thought to conflict essentially with the testimony he had just given. His attention was directed to the time, place and circumstances of the conversation. He denied positively that any such conversation had happened. Upon re-examination by the defendant, he persisted in this denial. Atchison was then called, and testified to the conversation alluded to, and his statement directly conflicted with that of Berry. The defendant then offered to recall Berry "for the purpose of contradicting S. Atchison and re-affirming what said Berry had already stated;" but the court refused to permit him to be recalled.

It is manifest that in determining how far this court acted discreetly in the exclusion of this witness Berry, it is very important to consider the objects proposed by the party desiring the testimony. Under the circumstances, I apprehend the witness Berry would readily have been permitted to explain his previous statements, if he had desired to do so. If any mistake had been suggested, or any clue discovered by which there was a probability of reconciling the two statements of Atchison and Berry, the court would hardly have hesitated to let in such testimony, at whatever stage of the trial it may have been offered. But there was no such object either avowed or intended. The avowed object of introducing Berry the second time, was to contradict Atchison and re-affirm his former statement. This was unnecessary—it would tend to endless repetition.

The record in this case moreover shows, that the avowed object of introducing Berry the second time was the one mentioned, and the only one. Upon the motion for a new trial, the affidavit of Berry is taken, and is merely a reiteration of his previous statements. We can hardly presume that the witness could have communicated to the jury any thing more than what he deliberately embodies in his written affidavit.

The attempt to contradict a portion of the deposition of Hight, by proving that he had made contradictory statements in the presence of the witness, was properly prohibited by the court. No foundation was laid for the introduction of such testimony. The fact that Hight's testimony was in the form of a deposition, and he himself had gone to California, whilst it shows the impracticability of calling his attention such portions of his evidence as are proposed to be contradicted, and thus

laying the foundation for attacking his veracity, also deprives him of all opportunity of explaining or confirming his own statements. In this condition of things, there would be no propriety in relaxing the rule.

The affidavit of surprise made by the agent of the defendant, or the motion for a new trial, affords no inducement for the interference of this court. The affidavit contains nothing more than what might be said in almost every case by the losing party, to wit: that his adversary's testimony was different from what he anticipated. Besides it did not appear that any different character of testimony was likely to be produced upon a subsequent trial, unless it consisted in attacks upon the general credibility of the witness Berry, and for such purpose a new trial is never granted.

Judgment affirmed.