# William E. Cloyes, Appellee, v. Henry Plaatje, Appellant.

## Gen. No. 28,074.

1. HIGHWAYS AND STREETS—*violation of speed ordinance as proximate cause of collision as question of fact.* In an action for damages to an automobile resulting from a collision with another automobile at a street intersection, the question whether the collision would have occurred had not the plaintiff been driving his car faster than ten miles per hour, the rate fixed by ordinance, is one of fact upon conflicting evidence.

2. HIGHWAYS AND STREETS—*negligence of automobile driver as question of fact.* In an action for damages to plaintiff's automobile in a collision with that of defendant at a street intersection, the question whether the driver of defendant's car was negligent is one of fact where there is evidence that the defendant's car was being driven at a high rate of speed at the time of the collision and that it resulted therefrom.

3. PARENT AND CHILD—*liability of father for injury resulting from son's negligence in driving family automobile.* A father is liable for damages to plaintiff's automobile received in a collision with a car owned by the father and provided by him for the pleasure and use of his family, where at the time of the collision it was being driven by a minor son for his own pleasure, and the collision resulted from the son's negligence, the son having been given general permission to use the car.

4. EVIDENCE—*employees' time cards as basis for testimony as to value of repair work.* In an action for damages to an automobile, testimony of the garage keeper as to the number of hours his employees worked upon the car in making the necessary repairs is

admissible although based upon the entries made by the workmen on their time cards turned in by them at the close of the day's work.

5. VALUES—*price paid therefor as evidence of reasonable value of repairs to automobile.* The price paid by plaintiff to a garage proprietor for repairing his automobile, which was damaged in a collision with that of defendant, is presumptive evidence of the reasonable value of the repairs where the work was done by a regular garageman engaged in the repair business and there is nothing in the evidence to cast suspicion on the transaction between plaintiff and the garageman.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed December 26, 1923. Rehearing denied January 9, 1924.

LIGHTFOOT & BRAUN, for appellant; STUART B. KROHN, of counsel.

CHARLES E. HECKLER, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against Rudolph Plaatje and Henry Plaatje to recover the cost of repairing plaintiff's automobile, which was damaged as a result of a collision with the defendant Henry Plaatje's automobile at a street intersection in Chicago. The case was tried before the court and at the close of all the evidence it was dismissed as to the defendant Rudolph Plaatje, and there was a finding and judgment in plaintiff's favor against Henry Plaatje for $422.

The record discloses that plaintiff between four and five o'clock in the afternoon of September 24, was driving his coupé automobile east on Peterson Road, an east and west street in Chicago. This street is intersected at right angles by Western avenue. The day was cloudy and it had been raining. The center of Western avenue is occupied by a double line of

street car tracks. When plaintiff's automobile was about to cross the east or northbound street car track it was struck by Henry Plaatje's automobile, which was coming from the north, and damaged. The defendant's automobile was being driven by his son, Rudolph Plaatje, the other defendant, who was about seventeen years of age. About two hours prior to the collision, Rudolph Plaatje, the son, took his father's automobile, which was kept in the rear of their home, and went for a ride. Shortly after leaving the garage he picked up four young men companions about the same age as himself, and they drove around the north side of Chicago and into Evanston for about two hours, and were proceeding south on Western avenue at the time of the collision.

The evidence shows that there was a two-story building located at the northwest corner of the street intersection; and running west from this house along the north side of Peterson Road there was a high-board fence, extending about 125 feet, and that there was shrubbery and foliage along the north side of Peterson Road up to Western avenue.

It further appeared that the defendant, Henry Plaatje, owned the automobile, which he kept for family use; that there were five children in the family including Rudolph, all living at home—two girls and three boys; that Rudolph was the third child, two of the brothers being older than he was. Rudolph testified that he had his father's permission to use the car at any time he wanted to do so; that he had driven the automobile for about a year and a half; that the car was kept for the use of the family, and that he and one of his brothers drove it when they took the family out for a ride. The father, Henry Plaatje, testified that on the day in question, he had not sent his son Rudolph on any errand with the automobile. The defendant then sought to prove by the father that he did not know that his son had taken the car on the

day in question until after he had heard of the accident; that the son on the day of the accident was not using the automobile ''in any active errand for him''; that the son was not driving for the purpose of making any purchase of necessaries, but that he was simply out driving with friends on a pleasure trip, his own personal pleasure and the pleasure of his friends, without the knowledge of the father. Objection to this offer was sustained.

1. The defendant contends that the judgment is wrong and should be reversed because the evidence shows that plaintiff was guilty of contributory negligence, and that it further shows Rudolph Plaatje, the driver of defendant's automobile, was guilty of no negligence, and in support of this it is said that from plaintiff's own testimony it appears that at and just prior to the accident he was violating an ordinance of the City of Chicago by driving at a greater rate of speed than the ordinance permitted; that plaintiff's testimony showed that he was driving his automobile at from ten to fifteen miles per hour across Western avenue. Whereas, the ordinance provides that at such street crossing as the one involved, an automobile should not be driven at a speed of more than ten miles per hour. Counsel for defendant admit, as indeed they must, that the violation by plaintiff of this ordinance would not prevent a recovery unless there was a causal relation between such violation and the accident. But they contend that the evidence shows that if plaintiff had not been driving more than ten miles per hour at the time, he could have stopped and the collision would not have occurred. As is usual in such cases, the evidence as to the positions of the automobiles and the rate of speed each was traveling varies considerably. The evidence in behalf of the plaintiff tended to show that he was driving his car at from twelve to fifteen miles per hour and that the defendant's car was coming south at from thirty-five to forty

miles per hour. While the evidence offered on behalf of the defendant is to the effect that plaintiff's car was traveling about twenty-five miles per hour and that of the defendant's at from eighteen to twenty miles.

We have carefully considered all the evidence in the record and are clearly of the opinion that whether the collision would have occurred had not the plaintiff's car been traveling at a faster speed than ten miles per hour was a question of fact for the trial judge. So also was the question whether Rudolph Plaatje in driving the car was guilty of negligence, and, in such case, we are not at liberty under the law to disturb the finding of the trial judge who saw and heard the witnesses, unless it is clearly against the weight of the evidence, and this we are unable to do. Moreover, we might say that upon a careful consideration of the evidence we think the finding of the trial judge was clearly warranted.

2. The defendant further contends that the judgment is wrong because, as stated by plaintiff's counsel: "A parent is not liable for the torts of his son, when his son is not acting as his agent at the time of the injury complained of," and it is argued that under the evidence in the case the father was not liable for the negligence of his son Rudolph, and in support of this *Arkin v. Page*, 287 Ill. 420, is cited and relied upon. In that case it was held that the father was not liable for causing the death of a child who was run over in the streets of Chicago by his automobile, which was being driven by his twenty-year-old son. It appeared at the time of the accident the son was on his way from his home to the Lewis Institute for the purpose of seeing if he could register in a course of study at the summer school. The automobile was owned and furnished by the father for family use. There was a dissenting opinion by three of the judges to the effect that the father should be held liable. The court

there said: "Is the owner of an automobile, who has provided it for the use of his family for their pleasure, liable for an injury caused through the negligent driving of the automobile by a member of the family while using it for some personal purpose of his own?" The court there stated that the question had arisen in many cases and that the decisions were directly contrary and among the cases there referred to as holding the parent liable in such case was *King v. Smythe,* 140 Tenn. 217. The court then referred to cases holding the parent not liable and followed such cases in the decision rendered.

About two years afterwards the Supreme Court decided the case of *Graham v. Page,* 300 Ill. 40, in which it was held that the father, who owned an automobile, which was used for family purposes, was liable for an injury caused by the negligent driving of the car by his minor child. In that case a sixteen-year-old daughter was driving the car to a shoe shop to get a pair of her shoes she had left there to be repaired, and in doing so she struck and injured the plaintiff. In discussing liability in similar cases the court there referred to the fact that the decisions of the courts were not in harmony and said (p. 43): "Those holding the owner of an automobile liable for injuries caused by the negligent driving of a car by the child of the owner base the liability on the ground that the child was the servant or agent of the owner, and have sustained liability where the car was purchased and kept solely for the pleasure of the owner's family and a member of the family was driving it for his own pleasure when the injury occurred. The courts taking that view say the car was being used by authority of the owner for the purpose for which it was procured and kept, namely, the comfort, pleasure and entertainment of the family, which it is the duty of the father to provide for his family. Many of the cases holding that

view will be found cited in the dissenting opinion in *Arkin v. Page, supra,* and need not be again cited. So, also, many of the cases holding the opposite view will be found cited in the court's opinion in that case." The court then points out that in the case before it the daughter was not merely driving the car for pleasure but was using it on a family errand, one of the purposes for which the car was kept, and for which purpose the daughter was authorized to drive the car. And the court held that since she was performing her father's business, he was liable for the injuries caused by her negligence. The court then discussed other authorities and continuing said (p. 44) : "The weight of authority supports the liability of the owner of a car which is kept for family use and pleasure where an injury is negligently caused by it while driven by one of his children by his permission, and the reasoning of those cases seems sound and more in harmony with the principles of justice. We agree with the Supreme Court of Tennessee that where a father provides his family with an automobile for their pleasure, comfort and entertainment, 'the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained.' (*King v. Smythe,* 140 Tenn. 217.)"

In that case it will be noted that although the court distinguishes the facts from those in the *Arkin* case, yet it is there expressly stated that: "The weight of authority supports the liability of the owner of a car which is kept for family use and pleasure where an injury is negligently caused by it while driven by one of his children by his permission." And the court there expressly approved the rule announced by the Supreme Court of Tennessee, which case the court has refused to follow in the *Arkin* case.

In the instant case, the car having been furnished by the father for the family use and pleasure and the

son having the father's permission to use it for his pleasure, and an injury having been caused while it was being so used, the father is clearly liable under the rule announced in *Graham v. Page, supra.*

3.  It is also contended by the defendant that plaintiff failed to make any proper proof of the amount of his damages, and, therefore, the judgment should be reversed. The evidence shows that after plaintiff's car was damaged it was taken to a garage for repair, and that men in the employ of the garage company were put to work on it; that necessary material was purchased and that time cards were kept of the number of hours of labor expended on the work. The evidence also tends to show the reasonable and customary charge for the performance of such work, as well as the amount paid for the repairs by plaintiff. The proprietor of the garage who made the repairs testified that he bought a new motor arm from the Kissel Car Company for which he paid $40.50, and that he did not know whether that was a fair price; that they asked him $40.50, which sum he had to pay. This item together with some other small items were disallowed and plaintiff makes no complaint here.

Defendant's position is that the testimony of the proprietor as to the number of hours the men were engaged upon the work should not have been admitted, because the witness relied upon the entries made by the working men on their time cards, which were turned in at the close of the day. We think this was sufficient. Nor is there any merit in the contention that the evidence fails to show the reasonable and usual charge for all of the several items made in the repair of the car. It is perfectly clear that plaintiff did not receive all that he was entitled to under the evidence. And the court held him to a great deal more proof on the question of damages than the law requires.

The evidence shows that the automobile was taken

to a concern which was engaged in the business of repairing of automobiles; that plaintiff's car was then repaired by the garage company in the ordinary course of business; that the repairs made were those required as a result of the collision; that the garage company presented its bill for the repairs to plaintiff which plaintiff paid. In these circumstances, we think what plaintiff paid for the repairs was sufficient to warrant the recovery by him of such sum without any further evidence, since nothing appeared to cast suspicion on the transaction between plaintiff and the garage company, and, therefore, it will be presumed that the charge made was reasonable. *Travis v. Pierson,* 43 Ill. App. 579; *Peabody v. Lynch,* 184 Ill. App. 78; *Coyne v. Cleveland, C., C. & St. L. Ry. Co.,* 208 Ill. App. 425; *Atchison v. Steamboat,* 14 Mo. 63. To the same effect are *Johnson v. Canfield-Swigart Co.,* 292 Ill. 101; *Sears, Roebuck & Co. v. Mears Slayton Lumber Co.,* 226 Ill. App. 287 (and cases there cited); *Budd v. Van Orden,* 33 N. J. Eq. 143.

In the *Travis* case, suit was brought to recover damages on account of a collision between two vehicles. The court there said (p. 579): "In cases of collision the innocent party is entitled to recover from the wrongdoer what is reasonably necessary for him to pay, and he does pay, in order to repair the damage done, and also a reasonable sum for the loss of the use of his carriage while he is necessarily deprived of its use * * * (citing authorities).

"In ordinary business transactions, nothing appearing to cast suspicion on the fairness thereof, good faith is presumed, and evidence of what one has actually paid for necessary repairs is admissible to show what the reasonable cost of such repairs is. *Atchison v. Steamboat,* 14 Mo. 63-69; *Hildreth v. Fitts,* 53 Vt. 684-690."

In the *Peabody* case, suit was brought to recover damages done to an automobile through the negligence of the defendant. The court held that the reasonable

cost of repair was the proper measure of damages and said (p. 79): "What was actually paid would only be admissible in such a case as this as showing what the reasonable cost would be. *Travis v. Pierson,* 43 Ill. App. 579."

In the *Johnson* case, the Supreme Court of this State said (pp. 111-112): "The price actually paid at a bona fide sale of property, the value of which is in issue, is admissible to prove the value of such property. (13 Encyc. of Evidence 447, 528, 539.) Such proof is sufficient evidence of its value in the absence of other testimony. (13 Encyc. of Evidence, 536.)"

In the *Sears, Roebuck & Co.* case, we held that the value of a portable house was shown by evidence of what was paid for it shortly before the sale, the sale having been free and voluntary and made in good faith, and cite a number of authorities in support of this.

In the *Budd* case, the Court of Errors and Appeals of New Jersey said (pp. 146, 147): "The only absolute test we can have of the value of a merchantable article is what it has been sold for at a fair sale. All other means of ascertaining the value of a merchantable commodity are speculative, and must to a greater or less extent, be uncertain. A sale is a demonstration of the fact, while estimates, even by the best judges, are simply matters of opinion, which, at best, are only approaches to the fact."

It has always been held in this State that in determining the value of real or personal property, evidence of other sales of similar property, made at or about the time, was admissible on this question. And it is further held that the price paid for property at a voluntary and bona fide sale is presumptive evidence of its value. And we think this principle is analogous to the one involved in the case before us, viz., that the price paid for repairing an automobile, where the work has been done by a person engaged in that line of business, nothing appearing to cast suspicion on

the transaction, the bill presented by the repairman and paid, is presumptive evidence of the reasonable value of the repairs. We have reached this conclusion after careful consideration, realizing that there are other authorities holding to the contrary, viz., that a receipted bill for repairs to an automobile does not prove the reasonable value of the repairs, and is not competent on the question of damages. Section 986, Berry on Automobiles (3rd ed.), where that authority cites in support of this case of *Strom v. New York Rys. Co.*, 159 N. Y. Supp. 1095; *W. S. Conrad Co. v. St. Paul City Ry. Co.*, 130 Minn. 128; *Galveston-Houston Elec. Ry. Co. v. English* (Tex. Civ. App.), 178 S. W. 666.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

TAYLOR, P. J., and THOMSON, J., concur.