Dixmoor Golf Club, Inc., Appellant, v. Charles Evans, Jr., et al., Defendants. Henry Weinberger, Appellee.

Gen. No. 37,247.

Matchett, P. J., dissenting.

Heard in the first division of this court for the first district at the December term, 1933. Opinion filed April 30, 1934. Rehearing denied May 14, 1934.

Dennis J. O'Toole and James F. McNicholas, for appellant.

Slottow & Leviton, for appellee; Charles Leviton, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

By this appeal complainant seeks the reversal of a decree of the superior court dismissing its bill of complaint for want of equity.

This cause has been in the courts for many years. The bill was filed in October, 1925; complainant sought to compel the defendants, eight in number, to account for secret profits made by them as organizers of the complainant club while they were directors and controlling it, and for other relief.

Upon the first hearing the chancellor granted the relief complainant asked for, finding that the eight defendants were severally liable to complainant for the share each received of the secret profits; three of the defendants, Kendrick, Weinberger and Wheeler, appealed to the Supreme Court from that decree; the other defendants apparently were satisfied to be held severally liable for the amount each had received of

the secret profits and some of them settled with complainant upon this basis. Complainant assigned as cross error in the Supreme Court appeal the failure of the trial court to find that the defendants were also jointly as well as severally liable.

The opinion of the Supreme Court in *Dixmoor Golf Club v. Evans,* 325 Ill. 612, sets out in detail the various acts of the defendants giving rise to their liability; the court sustained the cross error of complainant and reversed the decree of the superior court and remanded the cause with directions to modify the decree so as to hold the defendants Kendrick, Weinberger and Wheeler (who, only, had appealed) jointly and severally liable. When the case was remanded to the superior court the chancellor entered a modified decree in accordance with the direction of the Supreme Court. From that decree as modified the defendant Wheeler alone appealed to the Appellate Court, contending that the superior court should have modified the decree so as to hold all of the eight defendants jointly as well as severally liable instead of holding only the three defendants, Kendrick, Weinberger and Wheeler, jointly and severally liable. That appeal was considered in this court and an opinion rendered (252 Ill. App. 468, certiorari denied by the Supreme Court, 254 Ill. App. XIV) which affirmed the decree of the superior court as modified. We there said that since "five of the defendants were not before the Supreme Court on the appeal, and since the liability of each of these five defendants as fixed by the original decree was severable and each of them was willing to abide by the decree, as to them it was final, and not to be disturbed on the appeal." It should be noted that neither Kendrick nor Weinberger appealed from the modified decree. Apparently they were satisfied with the holding that they and Wheeler were jointly and severally liable.

The cause was then referred to a master in chancery to take testimony and state the account; the master made his report, finding that there was a settlement in full between the complainant and certain defendants upon the basis of their several liability, and the account was stated upon that basis as to the other defendants who had not appealed from the first decree; the master also found that there was due from Kendrick, Weinberger and Wheeler, upon their joint and several liability, $56,757.44; Weinberger and Kendrick filed objections, which were heard as exceptions.

The chancellor sustained the report of the master in all respects except as to the finding that there was anything due from the defendants Weinberger and Kendrick; the court found that these two defendants had accounted fully to complainant and that the bill should be dismissed as to them and also as to all the other defendants, and the decree was accordingly entered. This appeal by complainant is from that decree.

The burden of complainant's argument in this court is that the joint liability of Kendrick, Weinberger and Wheeler was established by the opinions in this cause of the Supreme Court and of this court. Defendant Weinberger, who alone has followed this appeal, does not question this general rule; neither is the accounting of the master questioned.

Defendant relies upon the rule that where there is a judgment or decree against several joint tort-feasors, a settlement with one is an accord and satisfaction with all. The argument seems to be that, as three of the defendants, who had been held severally liable by the first decree, settled with complainant upon the basis of their several liabilities, that he, Weinberger, is entitled to the same treatment. If defendant Weinberger, with Wheeler and Kendrick, had not appealed to the Supreme Court, they could have settled with

complainant upon the same basis. In fact, it was stated in oral argument that such a settlement was proposed but defendants refused, preferring to hold the stock which represented the secret profits, expecting to gain thereby. Unfortunately for the three defendants named, the Supreme Court not only held them severally liable but also jointly liable. If they are in a disadvantageous position as compared with the other defendants, they have only themselves to blame.

Defendant argues that complainant made a complete accord and satisfaction with Wheeler, and that under the rule announced this must be held as a satisfaction as to all. As Wheeler was one of the three defendants held to be jointly liable, a satisfaction and release as to him would release the other two defendants, Weinberger and Kendrick.

In January, 1929, which was after the modified decree had been entered and while Wheeler's appeal was pending in the Appellate Court, complainant and Wheeler entered into a written memorandum which, after reciting the various steps in the litigation and that Wheeler is willing to compromise complainant's claim against him, recites Wheeler's surrender to complainant of 150 shares of the capital stock of complainant of the par value of $100 a share, Wheeler admitting that this stock belonged to complainant; also, certain notes of complainant held by Wheeler were surrendered; the memorandum recites that complainant accepts the same "as payment on account of the alleged liability of said S. K. Wheeler under the terms of said decree." Complainant agreed that before it would attempt to collect any additional moneys from Wheeler or attempt to enforce any decree against any money, property, etc., now owned or hereafter acquired by Wheeler, or pursue any other legal or equitable remedy to collect any additional sums under said decree, it would first exhaust its remedies against all the other

defendants. This memorandum was signed by complainant and Wheeler. The master found that pursuant to this agreement Wheeler surrendered 150 shares of the capital stock of the complainant and the three notes described in the memorandum. At the same time, by a separate writing, complainant waived, as to Wheeler only, the provisions of a stipulation whereby defendants had agreed not to sell or assign any of the stock standing in their names.

This settlement was clearly not an accord and satisfaction. It was merely a payment on account, without releasing Wheeler from any further liability. His status, as jointly liable under the decree, was exactly the same as it was prior to the making of this agreement. All that the complainant did was to agree to suspend action against Wheeler until it had exhausted its remedies against the other defendants, reserving the right to call upon Wheeler for additional sums due under the decree. We hold that complainant made no settlement with Wheeler resulting in a release of its claim against the two other defendants, Weinberger and Kendrick.

Defendant argues with some plausibility that it is most unjust that he should be held liable for the entire amount of over $56,000, when, as the record shows, he has returned to complainant the 80 shares of stock which represent his share of the secret profits, retaining only eight shares for which he paid cash at $100 a share. Defendant says that having made restitution upon the same basis as the other defendants who have settled with complainant, he is entitled to a finding that he has accounted in full. There is no doubt but that the defendant is in an unfortunate position, but we can only repeat that had he made restitution earlier he could have avoided the burden of joint liability. In any event, we could not remove his burden without going squarely contrary to the holdings of the Supreme Court and of this court. These cases settled,

beyond our power to change, that the defendant Weinberger is jointly liable for the amounts found due the complainant.

It follows, therefore, that the chancellor was in error in sustaining the objections to the master's report in the respect indicated and in ordering that the bill be dismissed for want of equity. The decree will therefore be reversed and the cause remanded with directions to enter a decree in accordance with the recommendations contained in the master's report.

*Reversed and remanded with directions.*

MATCHETT, P. J., dissents.

O'CONNOR, J., concurs.

MR. JUSTICE O'CONNOR specially concurring: I agree with what is said in the foregoing opinion and the conclusion reached, but in my opinion if the matter had not been adjudicated by the Supreme Court (325 Ill. 612, which reversed the decree of the superior court and remanded the cause with specific directions to modify the decree, which modified decree was affirmed by this court in 252 Ill. App. 468, and certiorari was denied by the Supreme Court), there never has been an accounting made, but on the contrary the parties have treated mere bookkeeping entries as actual money.

The record discloses that when there appeared to be a profit to the members of the syndicate known as Upham & Co., checks were drawn to the respective members of the syndicate, which checks in most instances were immediately indorsed by the payees and deposited by complainant golf club in its bank. In some instances the checks were deposited by the payee who drew his check to the golf club for the same amount and the golf club then deposited the check in its bank. When these checks were deposited with the club shares of stock of the club were issued to the individuals for the respective amounts, the shares

being issued at $100 each. This was according to an oral agreement entered into between the members of the syndicate. The transaction was merely colorable—bookkeeping entries; the parties did not get any money. It went to the golf club and all the members of the syndicate got was shares of stock in the golf club. It was more or less in the nature of a "wash sale," and yet the individual members of the syndicate are held liable as though the transaction involved real money. There is no evidence as to what the stock was worth except that when they could find a purchaser they would sell some of it at $100 a share. This obviously is some evidence of value (*Cloyes v. Plaatje,* 231 Ill. App. 183, 188), but the record discloses that all of the stock could not be sold to the public. There is no evidence in the record as to the amount of money spent in building the golf course. Obviously, the parties were liable only for the amount out of which the golf club was cheated.

Moreover, Charles K. ("Chick") Evans, Jr., was given 75 shares of stock in the golf club. It is said he paid nothing for the stock but he is held liable for it at $100 a share, with interest. He makes no complaint nor does anyone for him. It might have been of great benefit to the golf club to give Mr. Evans this stock. Judges are not presumed to be more unfamiliar with public affairs than is the average citizen. At the time in question Mr. Evans was the champion golfer, and his connection with the club might well be of more benefit to it than the 75 shares, which the club might not have been able to sell. But even if it were able to sell the stock, it might still have been a good investment for the golf club.

As stated, I am clear that there has never been an accounting in this case, but feel that the matter has been so adjudicated that it cannot now be gone into.