MILLBURN MUTUAL INSURANCE COMPANY OF LAKE VILLA, Plaintiff-Appellee, *v.* WALTER C. GLAZE, Indiv. and d/b/a Glaze Construction Company, Defendant-Appellee.—(NORTHERN ILLINOIS GAS COMPANY, Defendant-Appellant.)

Second District   No. 78-532

Opinion filed July 3, 1980.—Modified on denial of rehearing August 26, 1980.

Joseph J. Jares, Jr., of Jares, Komosa, Burke & Shanahan, of Chicago, for appellant.

George E. Riseborough and D. Richard Joslyn, both of Brydges, Riseborough & Morris, of Waukegan, and Michael W. Gantar, of Larson & Gantar, of Antioch, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This action was brought by plaintiff, Millburn Mutual Insurance Company of Lake Villa (hereafter Millburn), against Northern Illinois Gas Company (hereafter NiGas), and defendant Walter C. Glaze, d/b/a Glaze Construction Company (hereafter Glaze), to recover monies paid to its insured, Alex and Sylvia Geist, upon the destruction of the Geist home in an explosion and fire allegedly caused by the negligence of both

defendants. The first trial ended in a mistrial. The second trial ended in a jury verdict finding in favor of plaintiff in its complaint against NiGas, but against plaintiff in its complaint against Glaze. NiGas appeals.

For the reasons stated herein, we affirm the judgment of the trial court.

The facts giving rise to this lawsuit are basically undisputed. Glaze Construction Company was employed as a subcontractor on a State highways improvement project in Lake County. On February 27, 1975, Glaze employees were using a backhoe to trench a drainage ditch located within the State right-of-way on the south side of Route 22 in Lake Zurich. The backhoe struck and pulled apart a buried gas service line which allowed natural gas under high pressure to migrate into the drains and then into the home of Alex and Sylvia Geist, located at 20 Old Mill Grove Road in Lake Zurich. Sylvia Geist and her daughter Starlett were home at the time but left the house after they noticed the distinctive smell of odorized natural gas and were told by Glaze employees to get out of the house. Shortly thereafter, the house exploded from the accumulated gas. The Geist home and all its contents were completely destroyed in the explosion and subsequent fire. As a result of this incident, the Geists' insurance company, Millburn Mutual, paid a total of $58,324.55 to their insured for total property damage and temporary living expenses.

Upon receiving payment from the insurance company, the Geists assigned any cause of action they may have had against NiGas and Glaze to the insurance company, and Millburn then brought this subrogation action against both defendants to recover the sums paid to their insured under the policy of insurance. In its complaint against Glaze, plaintiff alleged that on the date in question, Glaze employees negligently operated a backhoe which caused the severance of the gas pipe servicing the Geist residence, ultimately resulting in the gas explosion. In its complaint against NiGas, Millburn alleged that NiGas was negligent in failing to warn Glaze of the existence of the gas service pipeline and that NiGas had negligently installed the gas service line in 1961.

Prior to the commencement of the first trial, counsel for plaintiff announced in open court that a stipulation had been entered into by all parties:

"MR. ROUX: Frank Roux for the plaintiff.

Discussion has been had with both counsel for the respective defendants, and there is an agreement between all counsel that parties to the action will stipulate that the total amount of $58,324.55 was paid by Millburn Mutual Insurance Company to Alex and Sylvia Geist relative to a property damage loss which they suffered on February 27, 1975, and that the checks were made payable as follows:

On the structure, $35,000;

On personal contents, $19,000;

And temporary additional living allowance, $4,324.55

That these checks were accepted by Mr. and Mrs. Geist and cashed by them.

THE COURT: I gather then that there is no issue that the insurance company here, the plaintiff, is entitled, because of these payments, to be subrogated to the rights of the Geists in bringing this lawsuit, but I gather from what Mr. Riseborough said just before we went on the record that that stipulation does not encompass either defendant—if I'm not speaking for you, Mr. Jares, let me know—that neither defendant is stipulating that that is the amount of the loss actually suffered.

MR. ROUX: That's correct.

MR. RISEBOROUGH [counsel for defendant Glaze]: I think there's a difference in the valuation of the house, is there not? $1500 or something like that. It might turn out that that might not be in issue, but if they should put in the appraiser to come in, the appraiser actually, I think, appraised the house somewhat less than the insurance company paid.

That's all.

MR. ROUX: We have no plans to introduce Mr. Dunlap's testimony to alter it.

MR. RISEBOROUGH: There shouldn't be any problem then.

MR. ROUX: There is also a stipulation between the parties admitting as to the corporate existence of the plaintiff.

THE COURT: So that that is not an issue of the case.

I'm still not certain from the defendants that the damage is in issue.

MR. JARES [counsel for defendant NiGas]: Your Honor, we wish to contest damages. We will stipulate that they paid the Geists these checks. That's the amount of the stipulation as far as I know.

MR. RISEBOROUGH: All right."

The stipulation was reduced to writing and was filed as of record. It reads as follows:

### "STIPULATION

"It is hereby stipulated and agreed by and between all parties to the above-captioned actions as follows:

1. That on the date of February 27, 1975, Alex and Sylvia Geist had in full force and effect a policy of fire, liability and extended coverage concerning their premises commonly known as 20 Old Mill Grove Road, in the Village of Lake Zurich, County of Lake, State of Illinois.

2. That the said policy of insurance coverage was provided to them by Millburn Mutual Insurance Company of Lake Villa, Illinois.

3. That as a result of the explosion and occurrence in question, the said Millburn Mutual Insurance Company became obligated and did pay to Alex and Sylvia Geist the sum of Fifty Eight Thousand Three Hundred Twenty-Four and 55/100 ($58,324.55) Dollars as follows:

A. Structure                                     $35,000.00
B. Contents of Structure                          19,000.00
C. Temporary additional living costs           $ 4,324.55

4. That the said Alex and Sylvia Geist did, in fact, receive in complete and full satisfaction of their claim against Millburn Mutual Insurance Company, the sum of Fifty Eight Thousand Three Hundred Twenty-Four and 55/100 ($58,324.55) Dollars.

5. That Millburn Mutual Insurance Company was a duly licensed corporation organized under the laws of the State of Illinois on February 27, 1975.

6. That Millburn Mutual Insurance Company entered into a contract of subrogation with Alex and Sylvia Geist of Lake Zurich, Illinois, on March 29, 1975, pursuant to an amicable provision of the policy of homeowners insurance furnished to the Geists by the said Millburn Mutual Insurance Company."

At the conclusion of the trial and after the proofs had closed, NiGas filed a motion for directed verdict on the ground that plaintiff had failed to introduce any evidence proving the value of the property destroyed, a necessary element of the plaintiff's case. In a discussion held in chambers, plaintiff's attorney asserted that proof of loss and payment by the insurance company were all that were necessary for plaintiff to recover on its complaint. Later, another of plaintiff's attorneys told the court that it was his understanding of the stipulation that the amount paid by the insurance company would be the amount of damages plaintiff would recover in the event of a verdict for plaintiff. This observation was joined in by the attorney for defendant Glaze. Counsel for NiGas disputed these statements, stating that he stated on the record at the start of trial that he wished to contest damages.

After extended discussion of the issue, the trial court concluded that a misunderstanding of the effect of the stipulation existed among counsel, which deprived plaintiff of its right to a fair trial. Over the strenuous objection of NiGas, a mistrial was declared, and a new trial was ordered by the court.

At the second trial, plaintiff contended that NiGas was negligent in failing to advise Glaze of the existence of gas lines in the area of construction. In support of this contention, plaintiff introduced evidence to show that the Illinois Department of Transportation sent notice of the

proposed construction to all general contractors and subcontractors who were participating in the Route 22 improvement project, as well as public utility companies, including both NiGas and Glaze. The testimony showed that NiGas and Glaze were sent detailed plans of the proposed construction and excavation and were requested to determine whether "conflicts" existed at the construction site. A "conflict," according to one of plaintiff's witnesses, was the existence of a utility line or facility in the construction area. The testimony further showed that, at a preconstruction meeting held in December, a Department of Transportation official asked a NiGas representative whether there were any potential conflicts in the construction area. According to plaintiff, the NiGas representative responded, in the presence of defendant Glaze, that no conflicts were anticipated.

Plaintiff also contended that NiGas was negligent in failing to bury the gas service connection line, which was struck by the Glaze backhoe, at a level deep enough to ensure safety. Over the objection of defendant, plaintiff introduced into evidence portions of a "State of Illinois, Department of Highways Maintenance Manual" which purported to require a utility to bury a pipeline not less than 30 inches below the pavement service or ditch line. There also was testimony from an engineer that the NiGas service connection had been buried with only four inches of cover.

In support of its claim that Glaze was negligent in causing the explosion, plaintiff introduced evidence that Glaze was advised by NiGas representatives to contact them before commencing construction to determine the location of any subsurface gas service connection lines. According to the testimony of plaintiff's witnesses, Glaze never attempted to contact NiGas before it started excavating at the Route 22 work site.

In defense of plaintiff's claims, Glaze contended that NiGas was negligent in installing the gas service connection line and that it had justifiably relied on NiGas' representation at the preconstruction meeting that no conflicts were anticipated. Witnesses for defendant Glaze testified that NiGas had advised Glaze employees that there were no potential conflicts at the construction site.

NiGas contended that Glaze was negligent in failing to request NiGas to locate any subsurface gas connection lines prior to beginning construction. Witnesses for NiGas testified that the original plans submitted to it for review omitted references to planned excavation for the installation of culvert, and that it was unaware of the Glaze construction activities. There also was testimony that Walter C. Glaze, who attended the preconstruction meeting, was told by NiGas employees to contact NiGas for pipeline locations before commencing construction.

NiGas also disputed Millburn's and Glaze's contentions that the gas service connection pipeline was buried under the ditch line with only four inches of cover. In this regard, a supervisor for NiGas testified that there was at least 20 inches of cover over the gas pipeline at the time of the accident.

At the conclusion of the second trial, the motions for directed verdicts of each defendant were denied, and the case was submitted to the jury for its consideration. The jury found Glaze not to be negligent in the occurrence, but found NiGas to be negligent. Judgment was entered upon the jury's verdict, and defendant NiGas appeals.

## I.

NiGas first argues that it was entitled to a directed verdict in its favor at the close of the first trial because plaintiff failed to introduce evidence of the value of the real and personal property destroyed in the explosion. Relying on *Lucas v. Bowman Dairy Co.* (1964), 50 Ill. App. 2d 413, 200 N.E.2d 374, and *Kroch's & Brentano's, Inc. v. Barber-Colman Co.* (1973), 16 Ill. App. 3d 412, 306 N.E.2d 522, defendant argues that testimony pertaining to damages incurred by a party is a necessary and critical element of the plaintiff's case, and that failing to introduce such testimony is fatal to plaintiff's action in this case.

■■ ■ We agree with defendant that evidence of value is necessary to recover damages for the loss of, or injury to, real or personal property. (*Lucas; Kroch's & Brentano's.*) However, we disagree with defendant's contention that there was no evidence of the value of the damaged property in the record of the first trial. The payment of $58,000 by the insurance company to its insured in full satisfaction of the insured's claim for damages to the house and personal property, we think, is some evidence as to the value of the property, and is sufficient, standing alone, to withstand a motion for directed verdict. Thus, NiGas was not entitled to a directed verdict at the close of evidence at the first trial.

■■ The parties have not cited us nor have we found an Illinois decision directly in point. However, it has long been the law in this State that proof of payment of a bill is admissible at trial as *prima facie* evidence of damages. (*Byalos v. Matheson* (1927), 328 Ill. 269, 159 N.E. 242; *Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 348-49, 150 N.E. 276.) This general rule has been applied in a variety of contexts. (*E.g., Clark v. Hoosier Casualty Co.* (1943), 319 Ill. App. 202, 48 N.E.2d 787 (physician's bill); *Cloyes v. Plaatje* (1923), 231 Ill. App. 183 (repair bill); see also *Saunders v. Wilson* (1969), 114 Ill. App. 2d 380, 253 N.E.2d 89.) And in *Chicago, Burlington & Quincy R.R. Co. v. Ommen* (1970), 130 Ill. App. 2d 713, 264 N.E.2d 535, the court held, *inter alia*, that proof of payment

by the plaintiff of bills arising out of the damage or destruction of railroad cars was *prima facie* evidence of damages and should have been admitted at trial.

We perceive no reason for applying a different rule in the case at bar. All parties to this action stipulated prior to trial that a policy of fire, liability, and extended coverage insurance was provided by Millburn to its insured, Mr. & Mrs. Geist; that as a result of the explosion, Millburn paid the Geists a total of $58,324.55, pursuant to the provisions of their policy; and that payment was accepted by the Geists in full satisfaction of their claim. Millburn was contractually obligated to pay the claim of insured upon proof of loss, and payment of the Geist claim is evidence of damages. (*Chicago, Burlington & Quincy R.R. Co.*) Thus, NiGas was not entitled to a direct verdict at the close of the first trial.

In view of our disposition of this issue, we need not determine whether the trial court erred in granting a mistrial at the conclusion of the first trial. If any error was committed, it was precipitated by NiGas' erroneous contention that no evidence pertaining to damages was introduced into evidence at trial. An appellant may not predicate reversal upon error he has induced or invited. *City of Waukegan v. Stanczak* (1955), 6 Ill. 2d 594, 129 N.E.2d 751; *Kioutas v. City of Chicago* (1965), 59 Ill. App. 2d 441, 208 N.E.2d 587.

## II.

Defendant also argues that the trial court erred in denying its motion for a change of venue pursuant to sections 1 and 3 of "An Act to revise the law in relation to change of venue" (Ill. Rev. Stat. 1977, ch. 110, pars. 501, 503). After Millburn's motion for mistrial was allowed, NiGas filed a motion for change of judge, which was denied by the trial court as being untimely filed. The motion itself asserted no grounds for a change of judge other than general allegations of prejudice, and NiGas apparently sought the change of venue as a matter of right.

Section 3 states, in pertinent part:

"A petition for change of venue shall not be granted unless it is presented before trial or hearing begins, and before the judge to whom it is presented has ruled on any substantial issue in the case ❋ ❋ ❋."

It is clear that the right to a change of venue is absolute where timely filed and where the petition conforms to the requirements of the statute. (*Delta Oil Co. v. Arnold* (1978), 77 Ill. App. 3d 375, 384 N.E.2d 25.) Defendant here reasons that, because a declaration of mistrial vitiates all prior orders and proceedings, a motion for change of venue filed before the commencement of a retrial and before the entry of rulings on substantial

issues pertaining to the second trial is timely and should be granted as a matter of right.

■■ We disagree. The venue statute expressly provides that a petition for change of venue (as a matter of right) must be filed before the assigned judge has made a substantial ruling "* * * in the case." The various rulings made in the course of the first trial, as well as the order granting a mistrial itself, constitute substantial rulings in the case for the purposes of the venue statute. While the force and effect of the prior rulings are vitiated by an order granting a mistrial, these rulings are not ignored in applying the provisions of the venue statute. Hence, we hold that the trial court acted correctly in denying NiGas' petition for change of venue.

### III.

Defendant's next argument is that the trial court erred in denying its motion to strike paragraph 12 of count II of plaintiff's complaint, which alleged that the gas company was negligent in failing to properly install the gas service connection to the Geist house in 1961. Defendant argues that as the injury occurred in 1975, and the alleged negligence occurred in 1961, the action was barred by the 5-year statute of limitations set forth in section 15 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 16).

■■ We again disagree. An action to recover damages for personal injuries or property damage sustained due to negligent installation accrues when the injury occurs, not at the time of installation. (*West American Insurance Co. v. Sal E. LoBianco & Son Co.* (1977), 69 Ill. 2d 126, 370 N.E.2d 804; see *Dolce v. Gamerdino* (1978), 60 Ill. App. 3d 124, 376 N.E.2d 273.) NiGas attempts to distinguish the *LoBianco* case on its facts, asserting that it did not have a "fair opportunity" to investigate the circumstances upon which liability against it is predicated. However, it is apparent that NiGas had ample opportunity to investigate the incident before suit was filed against it. *LoBianco* is clearly on point, and thus the trial court did not err in denying NiGas' motion to strike and dismiss.

### IV.

NiGas argues that the trial court erred in admitting into evidence portions of a State of Illinois Department of Highways Maintenance Manual which pertained to the installation of utility pipelines under a State highway. The sections of the manual admitted into evidence read, in part, as follows:

"7.16 Water, Oil, Gas and Gasoline Pipe Lines

1. All oil, gas and gasoline transmission pipe lines, except service connections crossings, installed under a State highway must be encased in a pipe of a larger diameter. In general, pipe casings shall extend to the center of the ditch or to the toe of the fill slope

on each side of the roadway. If this requirement is impracticable, then the pipe casings must be extended a minimum of 5 feet beyond the outer edges of the shoulder, except in special cases, such as in a side hill cut, where these limitations may be altered slightly.

\* \* \*

4. Pipe lines of this type should be placed a minimum of 30 inches below the pavement surface and the ditch line, or deeper if the District Engineer so determines."

Plaintiff contends that this manual sets forth regulations which have the force and effect of law and which applied to NiGas at the time it installed the gas service connection under Route 22 in 1961; thus, it is argued, a violation of the manual's guidelines would establish a breach of duty on NiGas' part. On the other hand, NiGas argues that the manual is merely a "private guideline" which does not have the force and effect of law.

■■ We believe plaintiff is correct in this instance. It is clear that consent must be obtained from the appropriate highway authority before pipelines may be installed on State property. (Section 9—113 of the Illinois Highway Code, Ill. Rev. Stat. 1959, ch. 121, par. 9—113.) Furthermore, such consent may be granted "\* \* \* subject to such terms and conditions \* \* \* the highway authority deems [necessary] for the best interest of the public." (Ill. Rev. Stat. 1959, ch. 121, par. 9—113.) In reviewing the provisions of the manual cited to us by NiGas, it is clear that the manual provides both the procedures and conditions under which consent to install pipelines upon State property will be granted. (See Manual, ch. VII, pars. 7.1-7.4.) It is also clear, we think, that such consent is granted upon the express condition that the work is performed according to the specifications announced in the manual. Under such circumstances, the work specifications contained in the manual are the equivalent of rules and regulations issued pursuant to legislative authorization and having the force and effect of law.

Moreover, the requirement that utility lines must be buried at least 30 inches below the pavement surface or ditch is clearly designed for the protection of human life or property. Thus, a demonstrated violation of this requirement is *prima facie* evidence of negligence. (*E.g., Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93; *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235.) Accordingly, the trial court did not err in admitting section 7.16, paragraphs 1 through 4 of the manual into evidence.

## V.

■■ NiGas next contends that an excavator who fails to request a utility to

locate its subsurface gas lines prior to commencing construction should be held liable, as a matter of law, for all consequent damages that result from its excavating activities. Even if we were to assume, *arguendo*, that Glaze should be held liable as a matter of law under the circumstances present in the case at bar, it does not necessarily follow from this proposition that NiGas is thereby relieved of all liability for the damages caused by its own negligence. It has long been the law in this State that where two or more persons directly produce a single, indivisible injury by their own negligence, they are jointly and severally liable even though there was no common duty, common design, or concerted action. (*Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53; *Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62.) While the supervening acts or negligence of another person may break the causal connection between the original wrong and the resultant injury, and thus become the direct and immediate cause of the injury (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93), such acts must have been unforeseeable (*Davis*; *Seith v. Commonwealth Electric Co.* (1909), 241 Ill. 252, 89 N.E. 425). We believe that from the facts adduced in the instant case, there is sufficient evidence presented from which the jury could conclude that the negligence of NiGas was a primary cause of the injury and that the actions of Glaze were foreseeable. We thus cannot agree with NiGas' argument that the judgment entered against it should be reversed solely because Glaze failed to determine the location of subsurface gas lines prior to commencing excavation.

## VI.

■■ Defendant next contends that the trial court erred in denying its motion which, pursuant to the procedure set forth in Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308), asked for permission to seek appellate review of the order granting plaintiff's motion for mistrial. As both Millburn and Glaze point out, however, this issue is moot, because final judgment has been entered in this cause and NiGas may now address directly the correctness of the trial court's ruling. Furthermore, even if this court held that the trial court erred in denying its Rule 308 motion, we could not award any practical relief to NiGas. Thus, we will not address the merits of this argument.

■■ Defendant also argues that the trial court erred in striking counts I and II of its cross-complaint against co-defendant Glaze. In general, both counts sought recovery against Glaze for its negligence in the operation of the backhoe, and were similar to the complaint filed by Millburn against Glaze. In light of the jury's verdict finding that Glaze was not negligent in the occurrence, this issue is also moot. Hence, we will not consider NiGas' argument in this regard.

## VII.

Finally, NiGas argues that the trial court erred in submitting or in refusing to submit certain instructions to the jury at the close of the trial. However, these issues are merely listed in the appellant's brief in summary fashion, without argument and without the citation of supporting authorities. Similarly, a number of points appear in the "Points and Authorities" section of NiGas' appellant's brief, but are not argued or further explained within the body of the brief.

■■ Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7)) requires the appellant to include in its brief a section devoted to "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The rule further states that "[p]oints not argued are waived * * *." In view of the appellant's failure to comply with this rule, we believe the remaining issues raised by NiGas should be considered as waived. *Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 395 N.E.2d 119; *In re Estate of Cochran* (1979), 72 Ill. App. 3d 812, 391 N.E.2d 35; see also *People v. Adams* (1969), 113 Ill. App. 2d 276, 252 N.E.2d 65.

For the reasons stated above, the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.