MARVIN JOHNSON, Indiv. and as Special Adm'r of the Estate of Violet Johnson, Deceased, *et al.*, Petitioners-Appellants, v. VALSPAR CORPORATION, Respondent-Appellee.

Second District   No. 2—92—1337

Opinion filed October 6, 1993.

Reese & Reese, of Rockford (Bernard P. Reese, Jr., of counsel), for appellants.

Eugene R. Pigatti, of Rockford, and Fredrikson & Byron, P.A., of Minneapolis, Minnesota (Leo G. Stern, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioners, Marvin Johnson, individually and as special administrator for the estate of Violet Johnson, Fred Johnson, and Donald Johnson, appeal from a series of orders entered by the circuit court of Winnebago County which culminated in the denial of their petition to be reinstated as plaintiffs in a lawsuit against respondent, Valspar Corporation. Petitioners assert the trial court erred in denying their requests for a change of venue and a jury trial and that the court's findings on their petition for reinstatement were against the manifest weight of the evidence. We affirm.

The parties appear before this court for the third time. This lawsuit was originally filed in 1972 against Valspar and other defendants. The petitioners, along with Marvin Johnson's two daughters, Elizabeth and Rebecca, were the plaintiffs. All the plaintiffs claimed they were injured in their health and property as a result of contamination of their farmland and water supply. They alleged that the contamination came from manufacturing wastes which Valspar stored on an adjoining farm occupied by another defendant, Walter Tipton. Finding that their cause of action was time barred, the trial court dismissed Elizabeth and Rebecca as party plaintiffs. A trial was held in May 1980 regarding the remaining plaintiffs, and the jury returned a verdict in favor of Valspar. All plaintiffs appealed to this court. We affirmed the verdict as to the petitioners. With regard to Elizabeth and

Rebecca, however, we reversed the trial court's finding that their cause was time barred and remanded the matter back to the trial court. (*Johnson v. Tipton* (1982), 103 Ill. App. 3d 291.) The daughters continued their suit at the trial level under a caption reflecting their then current surnames: Elizabeth Schoen & Rebecca Hampton v. The Valspar Corp. *et al.* (Cir. Ct. Winnebago Co.), No. 72—L—3454.

Almost nine years later, in February 1989, petitioners filed a motion seeking to be reinstated as party plaintiffs in the daughters' continuing action against Valspar. In an addendum to the motion they indicated they sought relief pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992))). Petitioners alleged that Valspar had fraudulently concealed relevant evidence during the course of the litigation which culminated in the May 1980 trial and that such evidence, had it been available, would have resulted in a different trial outcome. Although the trial court did not hold a hearing on the motion, in February 1990 it found that Valspar had not fraudulently concealed the information and documents not received by the petitioners, that the materials not received were merely cumulative to the evidence presented at the trial, and that the jury had the evidence before them when deciding the same issues. Accordingly, the trial court denied the petition and found there was no just reason to delay appeal of the issue. (See 134 Ill. 2d R. 304(a).) We reversed and remanded the case for an evidentiary hearing on the matter of fraudulent concealment. *Johnson v. Valspar* (1991), 207 Ill. App. 3d 1112 (unpublished order under Supreme Court Rule 23).

Upon remand, the trial court first denied petitioners' motion for a change of venue and granted Valspar's motion to strike petitioners' jury demand. Upon completion of the hearing, which was held on October 21 and 22, 1991, February 3 and 4 and March 17, 1992, the trial court again found Valspar not guilty of fraudulent concealment and denied the motion to reinstate. After their post-trial motion was also denied, petitioners brought this appeal.

■ Petitioners make a preliminary argument that the trial court should have granted their motion for change of venue as a matter of right. The motion was made immediately following remand and alleged prejudice on the part of the trial judge. There is an absolute right to a change of venue where a motion alleging prejudice of the judge is filed before trial or hearing and before the judge hearing the motion has made any substantial ruling (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1001(a)(2), (c) (now 735 ILCS 5/2—1001(a)(2), (c) (West 1992)); *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 530), but such a mo-

tion is untimely if made after a ruling on a substantive matter (*In re Marriage of Smoller* (1991), 218 Ill. App. 3d 340, 346). Petitioners do not dispute that the trial court's denial of their petition for reinstatement was a substantive ruling. They insist, however, that after reversal the trial court's earlier rulings had no effect since a reversal abrogates the judgment reversed. Petitioners conclude that, upon remand, no substantive rulings had been entered and they were, therefore, entitled to the change they sought as a matter of right. Petitioners' argument cannot be sustained.

In *Schlenz v. Castle* (1985), 132 Ill. App. 3d 993, this court held that a motion for change of venue was not timely when it was filed after remand from the supreme court following an interlocutory appeal of a finding that the cause could not proceed as a class action. We stated that the cause in *Schlenz* was not a " 'new' proceeding, but a continuation of the proceeding." (*Schlenz*, 132 Ill. App. 3d at 1015.) In support of our conclusion we cited *In re Dependency of Bartha* (1969), 107 Ill. App. 2d 214, also a second district case, where the cause was remanded because the trial court order did not contain the findings of fact necessary to allow review. In a subsequent appeal we could not conclude, as urged by the respondent, that the proceedings following remand were new in nature and therefore required that a motion for change of venue be granted. We held in *Bartha* that the trial court did not err in denying the motion.

We also cited in *Schlenz*, for purposes of comparison, to *Millburn Mutual Insurance Co. v. Glaze* (1980), 86 Ill. App. 3d 1055, where it was argued to this court that a motion for change of venue, filed before the commencement of a retrial (following a declaration of mistrial) and before the entry of rulings on issues pertaining to the second trial, was timely and should have been granted as a matter of right. We affirmed the trial court's denial of the motion, observing that, although the force and effect of a court's prior rulings are vitiated by an order granting a mistrial, the rulings are not ignored in applying the provisions of the venue statute if they are substantial rulings.

Based on our own precedent, we conclude that petitioners' motion for change of venue was properly denied. As we did in *Bartha* and *Schlenz*, we find that the proceedings following remand in this case were not new, but merely a continuation of all that had previously transpired in the trial court. In addition, if the court's prior rulings are effective for purposes of determining matters of venue prior to a complete retrial, as in *Schlenz*, we certainly think such rulings should

be effective for the same purpose when a cause is merely remanded for an evidentiary hearing.

Petitioners' reliance on *United Nuclear Corp. v. Energy Conversion Devices, Inc.* (1982), 110 Ill. App. 3d 88, is misplaced. After explaining that the trial court had denied the plaintiff's motion for change of venue because it had made a substantive ruling, the *United* court remarked:

> "Upon remand of the present case, however, the trial court's rulings will have no effect since a reversal abrogates the judgment or decree reversed and leaves the case as it stood prior to the entry thereof. [Citations.] Thus, no substantive rulings will have been entered, and either party may at that point apply for a change of venue." (*United*, 110 Ill. App. 3d at 112.)

However, the court's remarks occurred in *dicta*, not as a holding. Before addressing the venue issue the court stated: "As the foregoing discussion indicates, it is unnecessary for us to determine if the trial court erred in denying United's motions for change of venue." (*United*, 110 Ill. App. 3d at 111.) Even more significantly, the authority cited by the *United* court provides no support for its comments. The court cited *Willett Co. v. Carpentier* (1954), 4 Ill. 2d 407, *People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, and *Loy v. Booth* (1974), 16 Ill. App. 3d 1077. None of these cases raises an issue concerning the propriety of a motion for change of venue following remand. While all of them contain language setting forth the general proposition that when a judgment or order is reversed the effect is to abrogate the judgment or order and leave the case as it stood prior to entry of such order, none of them applies the principle to allow a motion for change of venue following remand. On the contrary, the principle is invoked in *Willett* and *Loy* to prevent a party from benefiting unjustly from a judgment subsequently reversed. In *Scott* it is applied to determine that, when an underlying judgment is reversed, supplementary proceedings to collect the judgment must also fail. Petitioners' invocation of *United* is of no avail.

■ In a second argument based on procedure, petitioners contend they should have been granted a jury trial at the hearing held upon remand. Essentially, petitioners urge that determination of fraud is a legal rather than equitable matter and whether fraudulent concealment occurred presented factual questions which they were entitled to have resolved by a jury. Petitioners lose sight of the nature of their motion to reinstate.

Petitioners' original motion contained no reference to a statutory basis for their request for reinstatement. The later-filed addendum to

the motion, however, specifically invoked section 2—1401 of the Code of Civil Procedure, which provides a statutory mechanism for vacating or modifying a final order or judgment more than 30 days after its entry. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992)); *In re Marriage of Oldham* (1991), 222 Ill. App. 3d 744, 753.) It is well established that a section 2—1401 petition for relief from a final judgment is directed to the equitable powers of the court and should be considered in light of equitable principles. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 225; *In re Marriage of Hoppe* (1991), 220 Ill. App. 3d 271, 283.) There is no right to a jury trial in equitable proceedings or proceedings seeking equitable relief. (*Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 167.) The question of whether a section 2—1401 petition should be granted lies within the trial court's discretion, and, absent an abuse of discretion, the determination of the trial court will not be disturbed. (*Airoom*, 114 Ill. 2d at 221; *Oldham*, 222 Ill. App. 3d at 754.) Petitioners' claim that they had a right to a jury trial is without merit.

Petitioners correctly note that the trial court may, in its discretion, use a jury to determine an equitable issue. (See *Vaughn*, 126 Ill. 2d at 167.) It is urged upon us by petitioners, for a number of different reasons, that the trial court here abused its discretion in denying a jury trial. As we read them, however, the reasons are merely bald and unsupported statements of petitioners' position. They do not constitute an argument in any sense of the word. Thus, we need consider them no further.

We turn now to petitioners' contention that the trial court erred when it found Valspar had not fraudulently concealed evidence relevant to the 1980 trial. As we have indicated, petitioners brought their motion for reinstatement pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992))), which provides for relief from a final judgment more than 30 days after its entry. The purpose of section 2—1401 is to bring before the trial court matters which, if known to the court when judgment was rendered, would have prevented such judgment. (*In re Marriage of Halas* (1988), 173 Ill. App. 3d 218, 223.) However, section 2—1401 is not to be used as a device to relitigate issues already resolved or to put in issue matters which could have been adjudicated. (*Halas*, 173 Ill. App. 3d at 223; *Malek v. Lederle Laboratories* (1987), 152 Ill. App. 3d 493, 497.) Nor is the section intended to be a procedure whereby a litigant may be relieved of the consequences of his own mistake or negligence. *Malek*, 152 Ill. App. 3d at 497.

A section 2—1401 petition must be filed within two years of entry of the relevant final judgment, but time during which the ground for relief is fraudulently concealed is excluded from the two-year period. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(c) (now 735 ILCS 5/2—1401(c) (West 1992)); *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 209.) The jury in this case found for Valspar in May 1980. Petitioners filed the motion to reinstate in February 1989, well beyond the two-year limitation of section 2—1401. Accordingly, respondent opposed the motion on the ground that it was time barred. In an addendum to their motion petitioners asserted that Valspar had fraudulently concealed evidence and, therefore, the two-year time period was tolled.

The trial court did not refer to the time-barred issue in its order denying the motion to reinstate. However, we made clear in our order under Rule 23 that the issue on remand was whether Valspar had fraudulently concealed evidence, thereby tolling the running of the statute. We specifically stated that only if the trial court determined that the petition was timely would it have been proper to rule on the merits of the petition. The trial court's July 1992 order, entered upon remand and again denying the petition to reinstate, expressly stated that a hearing had been held to determine the existence of fraudulent concealment in order to resolve the limitations question. Consequently, the only matter to be reviewed at this time is the trial court's determination that there had been no fraudulent concealment which might have tolled the statute.

■ The burden of proving fraudulent concealment is on the party asserting it, and the evidence must be clear and convincing, and not merely suspicious, in order to toll the statutory limit on seeking relief from final judgments. (*In re Application of County Treasurer* (1977), 51 Ill. App. 3d 697, 701; *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 78; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 423.) Here, then, the trial court had the initial task of determining whether petitioners offered clear and convincing evidence that Valspar had fraudulently concealed evidence which might have changed the outcome of the 1980 trial.

In their motion petitioners asserted that they had discovered the evidence allegedly concealed by Valspar as a result of other litigation. In 1982 the Royal Backes family, which had purchased petitioners' property in 1976, brought suit against Valspar in Federal court. (Backes v. Valspar (N.D. Ill. June 4, 1991), No. 81—CV—20119.) At the same time, Schoen v. Valspar continued in State court. Counsel for petitioners in this case also represented both the Backes family

and Rebecca Hampton and Elizabeth Schoen. The parallel State and Federal litigation involved essentially the same claims that had been made in *Johnson*. Petitioners claimed in their motion to reinstate that the newly discovered evidence was produced in Backes v. Valspar and Schoen v. Valspar, and it fell into the following eight categories:

"A. Raw materials utilized in the manufacturing process by the defendant Valspar from the period 1965 through 1976, which are important in determining the nature and extent of the waste generated by the defendant Valspar.

B. Lab analysis of the waste material generated by the defendant Valspar during the period of 1965 through 1976.

C. Material Safety Data Sheets specifically denied by the defendant to be in existence for the period in question, but a copy of such Material Safety Data Sheet from Valspar for 1972 is attached hereto and made a part hereof as Ex. B for reference.

D. Records concerning the investigation of the defendant Valspar at Franklin Grove, Illinois, which it has either destroyed or continues to conceal.

E. Investigations concerning dumping of toxic waste into Rock River in 1970 and 1971.

F. The disposition of waste containing mercury content.

G. The use and disposition of mercury organic compound as waste.

H. Federal and State EPA records showing the storage tanks for various toxic chemicals used as raw materials by the defendant and the volume of such usage, together with the presence of such toxic chemical in the waste material generated by the defendant Valspar."

On appeal petitioners urge that not only was this evidence not disclosed to them during discovery but also that, during the trial, Valspar's counsel, as well as witnesses from Valspar, made misrepresentations concerning the existence of the evidence and/or their knowledge of the evidence.

Regarding the categories of evidence set forth by petitioners, Valspar maintains that the only one requested prior to the 1980 trial or during the two-year limitations period was that concerning its raw materials. Valspar further asserts that detailed disclosure regarding its raw materials was timely made to petitioners.

As a preliminary observation, we note that petitioners cite many, many examples of alleged withholding of later discovered information or documents in both Schoen v. Valspar and Backes v. Valspar. We are

concerned here with information purportedly withheld in *Johnson*. Therefore, petitioners' examples are pertinent only to the extent they reveal that the later discovered information was also wrongfully withheld during the *Johnson* litigation. If such examples do not assist in this examination, they are irrelevant and will be ignored.

We return now to the parties' arguments, beginning with petitioners' urging that they demonstrated fraudulent concealment by showing that, during the 1980 trial, both Valspar employee witnesses and counsel for Valspar were frequently less than truthful regarding the existence of evidence, or their knowledge concerning the evidence, which was later discovered. We have examined the record in this regard very carefully and find that, over and over again, petitioners have taken testimony from the trial out of context, or mischaracterized it, or, in some instances, misrepresented what the witnesses actually said.

We note in this regard that in the 1980 trial there appears to have been a good deal of confusion or, at the very least, lack of communication between petitioners' counsel and the witnesses regarding certain critical terminology and technical concepts. This leads us to question whether some of the instances of concealment now urged by petitioners were not so much a matter of concealment as they were merely a misunderstanding.

Also, some discrepancies between witnesses' testimony in 1980 and the same witnesses' testimony at later hearings, including the hearing on remand, are not nearly so great as petitioners would have us believe. Indeed, such discrepancies may be easily accounted for by the fact that, by the time of hearing after remand, the witnesses were being asked about events and procedures occurring as much as 20 years earlier. Even at the 1980 trial, the events in question had happened much earlier. We addressed this fact in *Johnson*, where petitioners also charged that Valspar refused to cooperate in producing witnesses or exhibits. We discussed petitioners' argument as follows:

"[I]t is unclear what evidence, if any, was, in fact, not produced. The plaintiffs appear to be complaining principally on the lack of knowledge that former Valspar officials displayed at trial, which could have been explained by the passage of about eight years between the time the Valspar barrels were hauled to Tipton's property and the time of trial." (*Johnson*, 103 Ill. App. 3d at 298.)

We think our comment is even more compelling now since the evidentiary hearing took place some additional 11 years after the fraudulent concealment supposedly occurred. In any event, the court below could

have determined that petitioners' citation to testimony in the 1980 trial was not clear and convincing that Valspar employees and former employees made deliberate misrepresentations about the evidence sought from Valspar.

As for representations by Valspar's counsel, they are again taken out of the overall context of the case. For example, pursuant to a court order in Backes v. Valspar allowing him to go on Valspar's property to search, petitioners' counsel discovered certain records, called material safety data sheets, which he claims would have been relevant in *Johnson* but had not been produced. Too, several years after *Johnson*, Valspar found and produced for the first time certain batch cards containing information which petitioners claim was relevant and had been sought before the *Johnson* trial. Valspar had indicated prior to *Johnson* that batch cards from the relevant period had been destroyed pursuant to the company's document retention policy which called for destruction of records over five years old. According to Valspar the later discovered batch cards had inadvertently survived the destruction process. Petitioners strongly imply that counsel for Valspar deliberately misrepresented that the company had searched for or destroyed records such as the material safety data sheets and the batch cards. Petitioners' argument lacks a firm foundation.

First of all, as will be discussed, it is questionable whether petitioners asked for some of the later found information prior to 1980. Furthermore, there was evidence that the material safety data sheets found by petitioners' counsel had been placed in a storage area where such documentation was not normally stored. That area, therefore, had not been searched by Valspar for purposes of *Johnson*. It also appears that the binder of material safety data sheets found by counsel was an isolated volume mixed in with other, unrelated volumes of stored records. As for the batch cards, they pertained to only a limited number of the products made by Valspar in the 1968 to 1972 time period. Petitioners point us to no convincing evidence that Valspar did not, as a general rule, destroy batch cards after five years, in accord with its policy. All in all, based on the evidence before it, the trial court on remand could have concluded that petitioners had not adequately shown that counsel intended to deceive them by representations made during the 1980 trial.

Petitioners also contend that, at the remand hearing, they showed that Valspar fraudulently concealed information sought through discovery procedures prior to and during the 1980 trial. Rather than address separately each of the multitude of specific, but random, instances of wrongful withholding proffered by petitioners in their brief,

we will focus on the categories of evidence delineated by petitioners in their motion as having been withheld by Valspar, as set forth above. We note at the outset of this discussion our agreement with respondents that petitioners are not in a position to say certain documents and information were wrongfully concealed in the prior litigation unless they asked for such information at the time. See *Halas*, 173 Ill. App. 3d at 225; *Malek*, 152 Ill. App. 3d at 497.

With regard to the first category of evidence, Valspar does not dispute that the petitioners asked for information regarding raw materials used in the company's manufacturing processes from 1965 through 1976. Rather, Valspar maintains it provided the requested information in response to a 1979 interrogatory. Petitioners nevertheless insist that Valspar concealed batch cards which would have shown the chemical components of Valspar's products. Petitioners' argument on this issue is not persuasive.

To begin with, the record reflects that Valspar did, indeed, provide information regarding its raw materials. In their 1979 interrogatory petitioners asked about, and in its answers Valspar revealed, what raw materials the company purchased from each of a number of companies between 1966 and 1972. Valspar also listed the chemical makeup of each raw material. Petitioners further asked if the materials purchased contained certain elements or compounds. Valspar answered, with various qualifications, that they did contain most of the named elements and compounds, including mercury, phenols, lead, zinc, copper, phosphate, and iron. The trade and generic names of the chemicals were provided. Petitioners do not show how the information on the batch cards differed significantly from the information provided in Valspar's answers to interrogatories. Thus, they have not shown that failure to produce the batch cards amounted to fraudulent concealment of information regarding raw materials.

It is noteworthy also that petitioners never asked for batch cards, *per se*. Rather, in a 1980, pretrial interrogatory they asked: "For each product being manufactured [between 1965 and 1972], please list the chemical components of that product by chemical or generic name." Petitioners maintain this question should have elicited the batch cards. Even if the interrogatory is interpreted to include a request for batch cards, however, there were a number of problems with it. First of all, in May 1979 petitioners had filed a motion to compel discovery from Valspar. The motion sought "documents concerning purchase of various chemicals by Valspar for the periods of 1966 to 1970 for use in its manufacturing process and any documentary information concerning disposition of waste during that period of time." The court

denied the motion on the ground it was overly broad in scope. After indicating to petitioners that he thought they ought to specify the chemicals for which they wanted information, the trial judge added, "[E]verything they purchased is going too far." The judge then expressed concern whether, with the trial coming up shortly, counsel knew what chemicals caused petitioners' injuries. Counsel said he did. Despite this exchange, petitioners never requested information regarding specific chemicals. Rather, almost a year later, they submitted the pretrial interrogatory seeking information "for each product being manufactured," which is virtually the exact same request the trial judge had previously found to be overly broad.

In addition, while we cannot determine the exact date from the record, Valspar claims petitioners did not serve the relevant interrogatories on them until April 23, 1980, less than two weeks before the trial was scheduled to start. Valspar filed its answers on May 12, 1980, the last day of trial. While petitioners chide Valspar for filing its answers so late, it does not take issue with Valspar's contention that it was served with the interrogatories only two weeks before trial.

In sum, petitioners had plenty of time to narrow their interrogatory and seek information regarding specific chemicals, pursuant to the court's suggestion. Even if it is assumed Valspar had batch cards for the period of time requested, in light of the trial court's remarks Valspar had good reason to believe it was not necessary to produce them, unless petitioners were more specific in their request. Too, if Valspar had the volume of batch cards which petitioners seem to think it did, petitioners should have served their pretrial interrogatory in a more timely fashion. Finally, as we discussed, there was evidence that under defendant's document retention policy the batch cards that were found later would normally have been destroyed. This record, as a whole, demonstrates that petitioners' evidence of Valspar's alleged fraudulent concealment regarding its use of raw materials was far from clear and convincing.

Petitioners' second category of withheld evidence addresses laboratory analyses of Valspar's waste. Once again, petitioners do not tell us, and we cannot find, where they asked for this specific information. In fact, we are not certain of the identity of the analyses they claim were concealed. In their reply brief petitioners state that a 1971 laboratory analysis for mercury "rebuts respondent's denial of waste analysis." Petitioners cite to a 109-page exhibit but not to an exact page of either the exhibit or the record. Nevertheless, we have examined the cited exhibit and find that it contains a series of mercury

analysis reports which were prepared for Valspar between April 1971 and July 1972.

The record reflects that Valspar had the analyses done in response to a recently enacted EPA regulation on the amount of mercury allowable in the waters of Illinois. The regulation pertained to both water received (tap water) and water discharged. In Valspar's case the primary concern was the amount of mercury in the effluent Valspar was discharging to the municipal sewer system. Hence, most of the reports concern the mercury in either the tap water or the effluent from the Valspar facility. It is evident from the record that Valspar considered the waste produced from its manufacturing process and placed in drums for disposal to be something separate and apart from its effluent. Thus, petitioners rely on analyses whose relevance is, at best, uncertain. We suspect this might be another example of misunderstanding and failure to communicate rather than concealment. It may also explain Valspar's failure to produce the reports when asked only for information on disposition of waste. Besides, as will be discussed below, although they were aware at the time of the 1980 trial that Valspar had petitioned for a variance from the mercury regulation in 1971, petitioners did not pursue discovery of Valspar's documentation regarding either the petition or the variance that was granted. Such a request may have produced the laboratory analyses allegedly concealed by Valspar.

Aside from the reports just discussed, in their 1979 interrogatory petitioners asked Valspar about the chemical content of its waste material between 1966 and 1972. Valspar's answer, while far from comprehensive, did reveal that the company's waste material probably contained mercury, lead, zinc, and polymerized phenols. Valspar also related in broad terms the type of waste it disposed of in drums. Petitioners did not follow up with interrogatories directed at specific wastes, not even the mercury or phenols which they suspected as the cause of their injuries. We recognize that petitioners now claim their case in *Johnson* was not limited to only a few of the chemicals ultimately identified. However, it is clear from our opinion in *Johnson* that heavy metal and phenol pollution were at issue there. Various tests, including tests of petitioners' well water, were cited primarily for their results as to heavy metals and phenols, and the medical experts testified only as to levels of lead, mercury, and phenols found in members of the Johnson family. Thus, while petitioners claim they were denied lab analyses, they nevertheless received information regarding Valspar's waste materials which was significant to their cause. It was up to them to ask more specific questions.

In their third category petitioners cite Valspar's failure to produce material safety data sheets. These sheets provided information on the contents of each of Valspar's products, along with health-hazard data and safety precautions and procedures to be followed relative to each product. These are the sheets which were discovered by petitioners' counsel in 1989 during a search of Valspar's storage areas. While petitioners did not request material safety data sheets by name, they claim the information on the sheets was relevant to their inquiries about the hazardous nature of Valspar's raw materials, and the sheets, therefore, should have been produced. However, we have already mentioned that the sheets were found in an unexpected location and, as far as we can tell, were in one, isolated volume. Moreover, we have compared the ingredients listed as hazardous in the material safety data sheets to the chemicals purchased by Valspar, as reported in response to petitioners' 1979 interrogatory. The vast majority of the material safety data sheets chemicals are also included in Valspar's answers. This is not clear evidence that Valspar deliberately withheld the sheets from petitioners.

Petitioners next claim that Valspar concealed records concerning an investigation of its waste disposal activities at Franklin Grove, Illinois. Not only is there no showing of a request from petitioners for such records, but it is not at all clear any such records existed prior to the 1980 trial. In their reply brief petitioners urge that later discovered information regarding Franklin Grove demonstrated that Valspar knew about the disposition of waste at the Franklin Grove site prior to 1980 but concealed that knowledge. We fail to see the connection between this argument and petitioners' allegations of fraudulent concealment. The evidence they claim was withheld consisted of "records concerning the investigation of the defendant Valspar at Franklin Grove, Illinois," not Valspar's knowledge that its waste materials may have been taken there at some time. Furthermore, although one Valspar employee said he "might have" visited the site in 1979, there is virtually no evidence that any records concerning Franklin Grove were in fact generated before the 1980 trial.

The next item on petitioners' list of allegedly concealed evidence relates to investigations concerning the dumping of toxic waste into the Rock River in 1970 and 1971. Although petitioners claim that information about this incident would have helped them to demonstrate what wastes were produced by Valspar during the relevant time period, they never specifically requested such information. Moreover, petitioners challenged the exclusion of this same evidence from the 1980 trial. In *Johnson* we determined that the trial court had not erred in

excluding evidence of the purported occurrence, in part because it was irrelevant to Valspar's storage of barrels on Tipton's property. (See *Johnson*, 103 Ill. App. 3d at 298.) That determination as to relevance is now the law of the case and not open to reconsideration. (See *Hamilton v. Williams* (1992), 237 Ill. App. 3d 765, 773-74.) In our view the trial court could reasonably have concluded that the failure to produce evidence later determined to be irrelevant did not constitute a clear and convincing showing of fraudulent concealment. This is particularly so in light of petitioners' very broad and nonspecific requests for information.

Petitioners' next two categories refer to the disposition of waste containing mercury and the use and disposal of mercury-containing organic compounds. These are two more areas where petitioners did not ask for specific information but insist the information should have been forthcoming pursuant to their very general discovery requests. As we see it, petitioners received enough information to prompt further inquiries on their part. In their 1979 interrogatories petitioners asked if defendant kept records of disposition of waste. Valspar responded—cavalierly in our opinion—that, "Some records kept—what records do you want?" In answer to another interrogatory in the same set, Valspar indicated that its waste likely contained mercury. The trial court strongly suggested to petitioners that their 1979 motion to compel discovery, which was overly broad, would be honored if they were to ask about specific chemicals. Instead of pursuing the potential for more information specifically about the disposal of mercury in any form, almost a year later petitioners served a notice to produce which made another broad request for materials "relating to *** the disposal practices of Valspar of any and all waste products [generated between 1966 and 1972]." Petitioners cannot now characterize their failure to focus their discovery requests as Valspar's fraudulent concealment.

Petitioners specifically complain that Valspar concealed the petition it had filed with the State EPA in 1971. The petition sought a variance from the EPA mercury regulation, as mentioned earlier, and assertedly contained information about the mercury in Valspar's waste and the disposal of that waste. However, at the time petitioners were seeking such information, the petition itself was available as a public document through the EPA. With the exercise of ordinary diligence, petitioners could have discovered it. Absent such diligence, the trial court was justified in concluding the petition had not been fraudulently concealed. See *In re Application of County Treasurer* (1977), 51 Ill. App. 3d 697, 702; *County Board of School Trustees of Du Page*

*County ex rel. Hinsdale Township High School District No. 86 v. Association of Franciscan Fathers* (1977), 49 Ill. App. 3d 686, 696-97.

The conclusion we reach on this particular matter is particularly compelling since there was apparently nothing secret about the fact that Valspar had filed a petition for a variance. Valspar has included in the appendix to its brief a copy of an article from a Rockford newspaper, dated June 17, 1971, which discusses Valspar's petition in some detail. Valspar cites only to the *Johnson* record, rather than the record on appeal, for the location of the article. However, even though they directly address the petition for variance in their reply brief, insisting that it should have been produced, petitioners do not dispute that the petition had been made a matter of public knowledge through the 1971 newspaper article. We note, too, that in *Johnson* petitioners apparently sought to introduce this article into evidence. (See *Johnson*, 103 Ill. App. 3d at 297-98.) Under the circumstances the trial court could have been well persuaded that petitioners knew about the petition and could have found it themselves through inquiries at the EPA. They also could have, but did not, request Valspar to produce, specifically, any documentation or other information it had pertinent to this particular petition for variance.

Finally, petitioners assert that Valspar deliberately withheld various Federal and State EPA records concerning toxic chemicals used by Valspar. Once again, petitioners never asked specifically for EPA records prior to the 1980 trial, even though it appears they had become aware of various interactions between Valspar and the EPA before 1980. Like the petition discussed above, these records were public documents, available to petitioners through the EPA. In fact, petitioners ultimately did secure directly from the EPA some of the materials they sought. It is not altogether clear that Valspar had all the relevant documents in its possession at the time of trial but, even if we assume it did, since such records were public documents we cannot say they were fraudulently concealed by Valspar. We note, too, that we have carefully examined the EPA documentation later produced and have evaluated that documentation in light of the requests made by petitioners prior to the 1980 trial. In our view many of those requests were not reasonably calculated to produce the information petitioners now claim was wrongfully withheld. Hence, petitioners' evidence of fraudulent concealment once again fell below the clear and convincing standard.

■ The record of this case, viewed in its entirety, is supportive of the conclusion ultimately reached by the court below. The court could have determined that petitioners did not produce clear and convincing

evidence that Valspar fraudulently concealed relevant materials they sought to discover. Absent fraudulent concealment, the petitioners' cause was time barred under section 2—1401. It follows that the trial court's denial of the petitioners' motion to reinstate was not an abuse of discretion.

For the foregoing reasons the order of the circuit court of Winnebago County is affirmed.

Affirmed.

QUETSCH and COLWELL, JJ., concur.